# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |
|---|
| **ROBO-TEAM NA, INC.**, |
| Plaintiff, |
| v. |
| **ENDEAVOR ROBOTICS,** *et al.*, |
| Defendants. |

Case No. 1:17-cv-01263 (TNM)

## MEMORANDUM OPINION

Robo-Team NA, Inc., sells tactical ground robotics systems to United States government agencies including all branches of the military, the Department of Homeland Security, and the Federal Bureau of Investigation. Endeavor Robotics competes with Robo-Team for government contracts in this field. According to Robo-Team, Endeavor Robotics hired Sachem, a defense-focused lobbying firm, to spread a false rumor that the Chinese government controls Robo-Team and uses it to steal military technology from the United States. Robo-Team has sued Endeavor Robotics and Sachem for defamation, tortious interference with contractual and other business relationships, civil conspiracy, and unfair competition. Both Defendants moved to dismiss Robo-Team's claims under the Federal Rules of Civil Procedure. Both Defendants also argued that Robo-Team's lawsuit is a Strategic Lawsuit Against Public Participation, or SLAPP, and have moved to dismiss the case under the District of Columbia's Anti-SLAPP statute, which provides for the recovery of costs. Because this Court lacks personal jurisdiction over the Defendants, the motions to dismiss under the Federal Rules of Civil Procedure will be granted and the Anti-SLAPP motions will be dismissed.

# I. BACKGROUND

Robo-Team is a subsidiary of an Israeli company and has its principal place of business in Gaithersburg, Maryland. Compl. ¶ 8. Endeavor has its principal place of business in Chelmsford, Massachusetts, but conducts business with the United States government in the District of Columbia. *Id.* at ¶¶ 9, 12. Sachem has its principal place of business in Boston, Massachusetts, but conducts lobbying activities in the District of Columbia. *Id.* at ¶¶ 10, 13.

Robo-Team alleges that it has been competing with Endeavor for government contracts since at least 2014, and that Endeavor has been spreading false information about Robo-Team during that time. *Id.* at ¶¶ 16-17. Robo-Team alleges that Endeavor's "campaign of defamatory statements" intensified after Robo-Team defeated Endeavor in a competition for a particularly significant contract with the Air Force in 2015 and then declined Endeavor's proposals to partner on future federal bids and other projects. *Id.* at ¶¶ 17-19.

In late 2016 and early 2017 the Army began the competitive process for awarding two of the biggest robotics contracts offered by the military in the last 15 years. *Id.* at ¶¶ 20-21. Each contract was worth hundreds of millions of dollars. *Id.* Robo-Team alleges that Endeavor hired Sachem to damage Robo-Team's reputation and prevent it from competing successfully for these contracts, for other business, and for future federal contracts, including one contract that is expected to have a value of approximately $1 billion. *Id.* at ¶ 24. Sachem prepared a memorandum that was distributed on Capitol Hill and that included in its discussion of "Foreign Threats" a description of Robo-Team's alleged connections with China and alleged violation of International Traffic in Arms Regulations. *Id.* at ¶ 23; *see also id.* Ex. 1.

The allegations in Sachem's memorandum were repeated in a letter from Congressman Seth Moulton to Frank Kendall, the Undersecretary of Defense for Acquisition, Technology, and

Logistics, asking that "the Department of the Army . . . carefully examine the evidence of Chinese influence when considering award of [the two major contracts mentioned above]." *Id.* at ¶¶ 27-29; *see also id.* Ex. 2. They also appear to be echoed in a letter to Undersecretary Kendall that was signed by six other Members of Congress and circulated with supporting materials about Robo-Team's connections with China. *Id.* at ¶¶ 31-33; *see also id.* Ex. 3. At least one Endeavor employee told one of Robo-Team's government contracting customers that the company had been purchased by the Chinese government. *Id.* at ¶ 25.

Robo-Team alleges that the rumors Endeavor and Sachem spread damaged Robo-Team's customer relationships and good will, delayed orders and contracts, and forced Robo-Team to spend countless hours on damage control with current and prospective clients. *Id.* at ¶¶ 37. More specifically, Robo-Team alleged in June 2017 that it was still in the process of responding to a series of complex Requests for Information issued by the Department of State and the Department of Defense in February 2017, that dozens of current and prospective clients had reported concerns about Endeavor's allegations about Robo-Team's connections with the Chinese government, and that it had also had to deal with an inquiry by the Wall Street Journal. *Id.* at ¶¶ 34-37.

Robo-Team sued Endeavor and Sachem for defamation, tortious interference with contractual and other business relationships, civil conspiracy, and unfair competition. *Id.* at 11-14. Before me now are four motions to dismiss, two by each Defendant. Each Defendant has moved under the Federal Rules of Civil Procedure to dismiss Robo-Team's claims for lack of jurisdiction and for failure to state a claim. Each Defendant has also moved to dismiss under the District of Columbia's Anti-SLAPP statute and has requested an award of costs, including attorney's fees, pursuant to that statute.

## II. LEGAL STANDARD

To hear a claim against a defendant, a court must have personal jurisdiction over that defendant. Under the Due Process Clause, this means that the defendant must "have certain minimum contacts with ['the territory of the forum,' which is to say, the geographic area under the court's authority,] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Depending on the defendant's forum contacts, a court's personal jurisdiction over a defendant may be general, allowing the court to hear any claim against the defendant, or specific, allowing the court to hear claims against the defendant only if those claims arise from the defendant's forum contacts. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). A plaintiff bears the burden of establishing a factual basis for personal jurisdiction. *Crane v. New York Zoological Soc.*, 894 F.2d 454, 456 (D.C. Cir. 1990).

## III. ANALYSIS

### A. This Court Lacks General Jurisdiction Because the District of Columbia Is Not the Defendants' Place of Incorporation or Principal Place of Business

A district court may exercise general jurisdiction over all claims against a corporate defendant if the corporation's "affiliations with the State are so continuous and systematic as to render [it] essentially at home" in the territory subject to the court's authority. *Daimler AG v. Bauman*, 571 U.S. 117, 761 (2014). Although the Supreme Court has not foreclosed the possibility of an "exceptional case," a corporation is generally considered to be at home only in the place of its incorporation and in its principal place of business. *See id.* & n.19. Endeavor is incorporated in Delaware, and Sachem is incorporated in Massachusetts. Endeavor's Mot. Dismiss, 5; *id.* Ex. A ¶ 6; Secretary of the Commonwealth of Massachusetts, Business Entity Summary for Sachem Strategies, LLC, available at http://corp.sec.state.ma.us/CorpWeb/

CorpSearch/CorpSummary.aspx?FEIN=001046166&SEARCH_TYPE=1 (last accessed April 6, 2018).[1] Robo-Team's own Complaint alleges that both Endeavor and Sachem have their principal places of business in Massachusetts. Compl. ¶¶ 9-10. And Robo-Team has not argued that this is an exceptional case where general jurisdiction may be based on factors other than the Defendants' places of incorporation and principal places of business.[2] Thus, Robo-Team has failed to establish facts showing that this Court has general jurisdiction over the Defendants.

**B. This Court Lacks Specific Jurisdiction Because the Defendants' Activities in the District of Columbia Are Not Forum Contacts Under the Government Contacts Rule**

A district court may exercise specific jurisdiction over a corporate defendant if jurisdiction is authorized by the long-arm statute of the state in which it is located and consistent with the due process requirements of the Constitution. *FC Inv. Group LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1094-95 (D.C. Cir. 2008). In relevant part, the long-arm statute for the District of Columbia authorizes the exercise of personal jurisdiction "over a person, who acts directly or by an agent, as to a claim for relief arising from the person's":

(1) transacting any business in the District of Columbia;
(2) contracting to supply services in the District of Columbia;
(3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages

---

[1] Courts may take judicial notice of public records of corporate filings maintained online by state Secretaries of State to determine a company's place of incorporation. *See In re Lorazepam & Clorazepate Antitrust Litig.*, 900 F. Supp. 2d 8, 18 (D.D.C. 2012).

[2] Robo-Team's argument that I have general jurisdiction over the Defendants depends on two district court decisions that are not binding on me, that pre-date the Supreme Court's decision in *Daimler*, and that, in any event, are distinguishable. *See* Pl.'s Opp. to Endeavor's Mot. Dismiss, 12-14 (citing *Marshall v. I-Flow, LLC*, 856 F. Supp. 2d 104, 108 (D.D.C. 2012) (making provisional finding of general jurisdiction over defendant that, among other things, devoted an entire sales region to the District of Columbia and sold products to every major hospital in the District of Columbia); *Mandelkorn v. Patrick*, 359 F. Supp. 692, 696-97 (D.D.C. 1973) (finding specific jurisdiction based on co-conspirator's acts within the District of Columbia)).

> in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia; [or] (5) having an interest in, using, or possessing real property in the District of Columbia . . . .

D.C. Code § 13-423(a)(1)-(5). The Due Process Clause permits a district court to exercise specific jurisdiction over a defendant where the defendant "purposefully directed [its] activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal citation omitted).

Robo-Team argues that I can exercise specific jurisdiction over the Defendants under any of the five sub-sections of the District of Columbia's long-arm statute quoted above. As an initial matter, it notes that any contacts made by Sachem as an agent of Endeavor are attributable to Endeavor under D.C. Code § 13-423(a) and argues that if I have jurisdiction over either Defendant, I also have jurisdiction over the other as a co-conspirator. *See Mandelkorn v. Patrick*, 359 F. Supp. 692, 696-97 (D.D.C. 1973). Robo-Team argues that I have specific jurisdiction over the Defendants because: (1) Endeavor bids for and performs government contracts in the District of Columbia; (2) Sachem lobbies Members of Congress in the District of Columbia; (3) Endeavor and Sachem have defamed Robo-Team both inside and outside of the District of Columbia; and (4) Sachem is registered to do business, leases a workspace, and has at least one employee in the District of Columbia. *See* Compl. ¶¶ 12-13; Pl.'s Opp. to Endeavor's Mot. Dismiss, 14-16; Pl.'s Opp. to Sachem's Mot. Dismiss, 2-3.[3] According to Robo-Team,

---

[3] I note that Robo-Team's Complaint does not argue for jurisdiction based on any alleged defamatory conduct that took place outside the District of Columbia or based on the allegation that Sachem is registered to do business, leases a workspace, and has at least one employee in the District of Columbia. However, Robo-Team's belated introduction of these arguments in its briefing does not alter my determination.

these purposeful contacts with the District of Columbia permit me to exercise specific jurisdiction over the Defendants, consistent with both the District of Columbia's long-arm statute and the requirements of due process.

But these contacts fall within the scope of the government contacts rule,[4] which states that "contact with a federal instrumentality located in the District will not give rise to personal jurisdiction." *United States v. Ferrara*, 54 F.3d 825, 831 (D.C. Cir. 1995); *see also Alkanani v. Aegis Def. Servs., LLC*, 976 F. Supp. 2d 13, 25 (D.D.C. 2014) (observing that it is "well established that contract negotiations *with the federal government* are excluded from the jurisdictional analysis"); *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 44-45 (D.D.C. 2003) (holding that lobbying activities conducted from an office in the District of Columbia "are precisely the type of activities protected by the government contacts exception and cannot serve as the basis for personal jurisdiction).

Robo-Team argues that the government contacts rule does not apply to Endeavor's contracting activities in the District of Columbia because the contracting officers with whom Endeavor had contact were "acting in their commercial capacity." Pl.'s Opp. to Endeavor's Mot. Dismiss, 17-18. According to Robo-Team, the government contacts rule is based solely on the First Amendment, and commercial interactions with the government do not implicate the First Amendment. *See Rose v. Silver*, 394 A.2d 1368, 1374 (D.C. 1978) (holding that the government

---

[4] To the extent Robo-Team alleges that defamatory statements were made to private parties beyond the scope of the government contacts rule, these allegations are conclusory and do not link the allegedly tortious conduct or any injury caused by it to the District of Columbia. *See* Compl. ¶¶ 5 (alleging generally that Defendants defamed Robo-Team to "private company executives in the robotics industry, including Robo-Team's current and prospective customers"), 25 (alleging that an Endeavor employee defamed Robo-Team to "a government contracting customer"), 35 (alleging that a Wall Street Journal reporter made an inquiry without alleging that Defendants made any statements to the reporter), 36-37 (alleging that Defendants defamed Robo-Team to "current and prospective customers," potentially including private customers).

contacts rule is based solely on the First Amendment); *Ramamurti v. Rolls-Royce Ltd.*, 454 F. Supp. 407, 409, 411 (D.D.C. 1978) (finding general jurisdiction over corporation whose "contacts with the District involve substantial commercial relations with the federal government acting in its proprietary capacity").

These arguments are unpersuasive. It is by no means established that the government contacts rule is in fact limited to activities that implicate the First Amendment. *Companhia Brasileira Carbureto De Calcio v. Applied Indus. Materials Corp.*, 35 A.3d 1127, 1133 n.5 (D.C. 2012) (noting apparent conflict between an en banc decision and the panel opinion in *Rose* and declining to decide whether the government contacts doctrine reaches beyond First Amendment concerns); *see also Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 786-87 (D.C. Cir. 1983) (same). This Court has consistently held that government contracting activities fall within the scope of the government contacts rule. *See, e.g.*, *Alkanani*, 976 F. Supp. 2d at 25 (collecting cases).[5] But even assuming *arguendo* that Endeavor's contracting activities in the District of Columbia fall outside the scope of the government contacts rule, it does not follow that I have jurisdiction. Endeavor's government contracting activities would not form a basis for specific jurisdiction in this case because Robo-Team's claims do not arise from these activities. *See* D.C. Code § 13-423(a); *Goodyear*, 564 U.S. at 919.[6]

---

[5] Robo-Team argues that *Alkanani* is distinguishable because it involved "no allegation or evidence that the Contract was negotiated or executed in the District of Columbia." Pl.'s Opp. to Endeavor's Mot. Dismiss, 18 (quoting *Alkanani*, 976 F. Supp. 2d at 26). But this was the basis for an alternative holding, as Robo-Team itself acknowledges. *Id.* It was not a necessary basis for applying the well-established rule that "contract negotiations with the federal government are excluded from the jurisdictional analysis." *See Alkanani*, 976 F. Supp. 2d at 25.

[6] To the extent Robo-Team argues that the government contacts rule has an exception for defamatory statements made to contracting officers, it does not point to any authority recognizing such an exception. *See* Pl.'s Opp. to Endeavor's Mot. Dismiss, 17-18. Rather, it invites me to create an exception to the government contacts rule that apparently has yet to be

8

Robo-Team also argues that the government contacts rule does not apply when a defendant "uses the government as an instrumentality of fraud, and thereby causes unwarranted government action against another." Pl.'s Opp. to Endeavor's Mot. Dismiss, 19 (quoting *Applied Indus. Materials Corp.*, 35 A.3d at 1134). But the very case on which Robo-Team relies to establish the fraud exception also establishes that the exception applies only if the heightened pleading requirements for alleging fraud are satisfied. *Applied Indus. Materials Corp.*, 35 A.3d at 1135. "Cases in which this fraud exception applies should be rare indeed," and courts applying it should demand "strict adherence to the standards of pleading." *Id.* at 1134. Robo-Team's Complaint does not even use the word "fraud" and does not come near satisfying the pleading requirements of Federal Rule of Civil Procedure 9(b). Thus, the fraud exception does not alter my conclusion that I lack specific jurisdiction over the Defendants. Since I have neither general nor specific personal jurisdiction over the Defendants in this case, the Defendants' motion to dismiss for lack of jurisdiction will be granted.[7]

---

recognized by the courts of the District of Columbia. This proposed exception would be based on the idea that the government contacts rule is based solely on the First Amendment—a premise that itself has yet to be established. *See Applied Indus. Materials Corp.*, 35 A.3d at 1133 n.5. As a federal judge interpreting District law, I decline to adopt Robo-Team's novel rule.

[7] In light of this conclusion, it is not necessary for me to determine whether I have diversity jurisdiction and it is not permissible for me to decide the parties' merits arguments. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584-85 (1999) (noting that a court must find subject matter jurisdiction before reaching the merits but may dismiss on non-merits grounds such as personal jurisdiction without first deciding the question of subject-matter jurisdiction). However, I note that the Defendants dispute whether Robo-Team has adequately alleged damages sufficient to support diversity jurisdiction and that Robo-Team has failed to establish diversity of citizenship between itself and the members of Sachem, LLC, whose citizenship it has not addressed. The conclusion that I lack personal jurisdiction also prevents me from deciding the Defendants' Anti-SLAPP motions. *See Forras v. Rauf*, 812 F.3d 1102, 1109 (D.C. Cir. 2016) (holding that district court should have promptly dismissed case for lack of personal jurisdiction rather than dismissing under Anti-SLAPP statute).

### C. Jurisdictional Discovery Is Not Necessary

A court may authorize jurisdictional discovery if the plaintiff demonstrates "a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant." *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1090 (D.C. Cir. 1998). A request for jurisdictional discovery "cannot be based on mere conjecture or speculation." *FC Inv. Grp. V. IFX Markets, Ltd.*, 529 F.3d 1087, 1094 (D.C. Cir. 2008). Robo-Team alleges that it has a good faith belief that jurisdictional discovery would reveal: (1) the identities of individuals and companies in the District of Columbia to whom the Defendants made false statements about Robo-Team; (2) additional facts about Defendants' conduct of business in the District of Columbia; and (3) additional facts about the control that Endeavor's parent company, which is located in the District of Columbia, exerts over Endeavor. Pl.'s Opp. to Endeavor's Mot. Dismiss, 23.

Robo-Team has not explained the basis for its belief that jurisdictional discovery would reveal that it has been defamed to private parties in the District of Columbia, nor does its Complaint purport to state a claim arising from defamatory statements made to private parties in the District of Columbia. Robo-Team has not alleged that it has a good faith belief that additional facts about the Defendants' conduct of business in the District of Columbia or about the control that Endeavor's parent company exerts over Endeavor would establish personal jurisdiction. Thus, Robo-Team has not demonstrated a more than speculative basis for believing that discovery would establish my jurisdiction over the claims stated in its Complaint.

## IV. CONCLUSION

For the reasons explained above, the Defendants' motions to dismiss under the Federal Rules of Civil Procedure will be granted and the Defendants' motions to dismiss under the District of Columbia's Anti-SLAPP statute will be dismissed. A separate order will issue.

Dated: April 26, 2018

TREVOR N. MCFADDEN
United States District Judge